# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**DAVID L. LUCERO,**

      **Plaintiff,**

vs.                                                                                                      Civ. No. 04-1090 RHS

**JOANNE B. BARNHART,**
**Commissioner of Social Security,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

    1.   This matter comes before the Court upon Plaintiff's Motion to Reverse Administrative Decision or, in the Alternative, a Remand of Said Decision ("Motion") **[Doc. 7]**, filed March 2, 2005.  Plaintiff, David L. Lucero, seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income benefits ("SSI") and Disability Insurance Benefits ("DIB").  The Appeals Council denied Plaintiff's request for review of the ALJ's decision.  (Tr. at 6-8.)  Thus, the Commissioner's decision became final.

    2.   On March 5, 2002, Plaintiff applied for SSI and DIB alleging a disability which commenced February 13, 2002 due to "diabetes, 2 flatten[ed] disks in spine, knee injuries [in] both knees, shoulder injuries, problems with feet and weakened eye sight getting worse yearly."  (Tr. at 46-48, 62, 258-61.)  Plaintiff was born on April 9, 1949, graduated from high school, and attended truck driving school and painter's school.  (Tr. at 46, 68, 69.)  Plaintiff has worked in the past as a driver, newspaper delivery man, maintenance man and painting contractor.  (Tr. at 63.)

    3.   The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v.

Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

    4. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson, 987 F.2d at 1486 (citing 42 U.S.C. § 423 (d)(1)(A)); see also 42 U.S.C. § 1382c(a)(3)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

    5. At the first four levels of the evaluation, the claimant must show: (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

    6. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (I) the "ALJ erred in his evaluation of Plaintiff's Residual Functional Capacity [('RFC')] for Light Work," (II) the "ALJ Erred in Finding the Plaintiff Not Credible," (III) the "ALJ Erred in Failing to Present Hypothetical Questions that Included All the Established Limitations," and (IV) the "ALJ Erred as a Matter of Law in Failing to Consider the Grids in Issuing his Decision." (See Plaintiff's Memorandum in Support of Motion ("Memo") **[Doc. 8]** at 2, 7, 8, 10.)

7. Plaintiff claims that his ability to work is limited because he "can[no]t regulate blood surgar [sic] while driving, cannot see well enough for night driving, back hurts all the time, knee's [sic] hurt and frequently go out[,] . . . hurts to sit [or] . . . stand long periods, [and] lifting is all but impossible." (Tr. at 62.) Plaintiff also alleges that his "hearing is very poor" and that he has "constant stomach problems." (Tr. at 69-70.) Plaintiff testified that he is "[a] little depressed," and spends most of the day sleeping and watching TV. (Tr. at 280, 285.) He is able to shower, shave and dress himself.[1] (Tr. at 286-87.) Plaintiff testified that he could sit for "a couple of hours," remain on his feet for two to three hours, walk "half a block to a block" and lift thirty pounds. (Tr. at 287-88.) Plaintiff testified that he could pick up items, bend over "some," and denied being able to kneel or squat. (Tr. at 288-89.)

8. The ALJ found that the "medical evidence indicates that claimant has Adjustment disorder with depressed mood, obesity, diabetes and osteoarthritis of the shoulder and knees, impairments that are severe within the meaning of the Regulations[,] but not severe enough to meet or medically equal one of the [listed] impairments." (Tr. at 19.) The ALJ determined that while Plaintiff was "unable to perform any of his past relevant work[,]" he has "the residual functional capacity: to perform a wide range of light work" within certain limitations.[2] (Tr. at 20 ¶¶7, 8.) At step five, the ALJ concluded that Plaintiff was not disabled, because "using [the Grids]

---

[1]Plaintiff testified that he cannot put on socks. (Tr. at 286.)

[2]The ALJ found that Plaintiff "must occasionally alternate between sitting and standing[,] . . . have only limited contact with the public, co-workers or supervisors[,] . . . cannot perform work which requires acute hearing or vision[,] . . . [and] can perform simple tasks at a competitive rate on a sustained basis." (Tr. at 20 ¶7.)

. . . as a framework for decision-making, there are a significant number of jobs in the national economy that [Plaintiff] could perform."[3]  (Tr. at 21.)

> (I)   *the "ALJ erred in his evaluation of Plaintiff's Residual Functional Capacity [('RFC')] for Light Work"*

9.  Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  SSR 83-10.  "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  Sitting may occur intermittently during the remaining time.  The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping.  Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.  They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work."  Id.

10.  Plaintiff contends that the ALJ was "clearly wrong" in finding that Plaintiff "was not disabled because he has the RFC to do light work."  (Plaintiff's Memo at 3.)  Plaintiff presents "[a] summary of some of these problems [that] reveal the persistence, the severity and the serious limitations caused by his impairments which affect his RFC."  (Id.)  Under sections labeled "Diabetes Mellitus," and "Back, knee, shoulder and elbow impairment," Plaintiff's memorandum

---

[3]With the assistance of a Vocational Expert ("VE"), the ALJ determined that "[e]xamples of such jobs include work as [a] production line assembler, . . . with 2 million positions nationally and 16,000 regionally; machine setter, . . . with 1.5 million positions nationally and 18,000 regionally; and shipping and receiving clerk, . . . with 600,000 positions nationally and 1500 regionally."  (Tr. at 21 ¶13.)

sets forth "chronologies" of doctor's visits and various reports, dating from December 23, 1998 to May 13, 2003. (See Plaintiff's Memo at 3-5.)

11. Plaintiff asserts that these chronological summaries are evidence of problems and limitations associated with hand and finger manipulations, "sitting, standing, walking, lifting, bending and stooping, as well as generalized weakness." (Plaintiff's Memo at 4-5.) However, of the eighteen chronological summaries listed by Plaintiff, only four entries concern visits, reports or care received on or after the date that Plaintiff alleges his disability began. Indeed, the majority of the entries are dated more than two years prior to that date. More important, however, is that Plaintiff does not point out, nor is it apparent to the Court, how any of the evidence summarized in the entries is inconsistent with the ALJ's assessment of Plaintiff's RFC and limitations.[4]

12. Plaintiff also contends that despite his limitations, "the ALJ found that [Plaintiff] . . . retains a [RFC] . . . for the performance of a full range of light work." (Plaintiff's Memo at 5.) Plaintiff asserts that the ALJ's finding "is totally wrong," apparently alleging that the ALJ failed to "consider all the relevant considerations" in assessing Plaintiff's RFC. (Plaintiff's Memo at 5-6 (citing Adkins v. Barnhart, 80 Fed.Appx. 44, 48 (10th Cir. Oct. 23, 2003) (not published in the Federal Reporter)[5].) However, the ALJ did not find that Plaintiff was capable of performing the

---

[4]For example, Plaintiff points out that on January 4, 2000, Dr. Alan Jakins reported that Plaintiff "remains temporarily totally disabled." (Plaintiff's Memo at 4 (citing Tr. at 120-21).) However, approximately nine days later, Dr. Jakins observed that Plaintiff "presents without any clinical signs of distress or of decreased function." (Tr. at 118.) Dr. Jakins further decided not to "render[] [Plaintiff] unable to work, . . . [and] sen[t] him back to a therapeutic trial of his normal work duties and activities . . . . [instructed Plaintiff] to take Aleve if he has pain, and . . . discontinue[d] his prescription medication." (Tr. at 118.)

[5]Plaintiff cited to Adkins only by its docket number, did not provide a page cite, and did not indicate that the decision is not published in the Federal Reporter.

full range of light work.[6]  Despite the ALJ's finding that Plaintiff is capable of a "wide range of light work,"[7] the limitations set forth by the ALJ prevent Plaintiff from performing all of the activities required to "be considered capable of performing a full or wide range of light work."  20 C.F.R. § 416.967(b).  Thus, while the ALJ may have mistakenly used the phrase "wide range," he did not find that Plaintiff was capable of performing the full range of light work.  The ALJ could have discussed his assessment of Plaintiff's abilities and RFC with more clarity and thoroughness; however, a review of Plaintiff's testimony and the medical evidence indicates that substantial evidence supports the ALJ's RFC finding.

    13.  Plaintiff asserts that "the ALJ's conclusions and findings are simply wrong and unrealistic given these pain problems and the resulting limitation on the Plaintiff."  (Plaintiff's Memo at 6.)  However, this assertion, and the remaining statements in the section of Plaintiff's Memo addressing the ALJ's RFC finding, are vague, conclusory, and devoid of any argument tailored to the facts of this case.[8]  Plaintiff's statements consist primarily of case holdings without

---

[6]In his decision, the ALJ variously stated that: (1) Plaintiff has the capacity to perform "a wide range of light work" (tr. at 18); (2) Plaintiff is capable of performing "a significant range of light work" (tr. at 19); (3) Plaintiff's "ability to perform all or substantially all of the requirements of light work is impeded by additional exertional and/or non-exertional limitations" (tr. at 19); and (4) Plaintiff's "exertional limitations do not allow him to perform the full range of light work" (tr. at 21 ¶13).

[7]"As to light work, the social security regulations use the phrases 'full range' and 'wide range' interchangeably."  Moore v. Barnhart, 315 F.Supp.2d 1141, 1142-43 (D.Kan. 2004) (citing 20 C.F.R. § 416.967(b)) (finding "no material difference between . . . 'wide range of sedentary work' and . . . 'full range of sedentary work'").

[8]For example, Plaintiff does not identify or describe "these pain problems and the resulting limitation" to which he refers.  In his decision, the ALJ acknowledged that Plaintiff has pain, but concluded that Plaintiff "retains the capacity to perform significant activities, despite his pain." (Tr. at 18.)

any reference to facts which describe, or at least identify, the ALJ's alleged errors as they relate to the record in this specific case.

14.  In his reply, Plaintiff asserts for the first time that "the ALJ did not consider the full extent of Plaintiff's mental impairments."  (Plaintiff's Reply Brief **[Doc. 14]** at 4.)  The Court does not ordinarily consider new issues raised in a reply brief.  See Stump v. Gates, 211 F.3d 527, 533 (10th Cir.2000).  Moreover, the evidence cited by Plaintiff in support of this argument does not appear to be inconsistent with the ALJ's finding that Plaintiff is capable of work involving limited contact with the public, co-workers or supervisors and requiring simple job tasks.  See, e.g, Segura v. Barnhart, 148 Fed.Appx. 707, 711 (10th Cir. Sep. 12, 2005) (not published in the Federal Reporter) (finding that the ALJ adequately accounted for claimant's mental limitations by restricting him to jobs that are routine and repetitive in nature); Bohn-Morton v. Commissioner of Social Security, 389 F.Supp.2d 804, 807 (E.D.Mich. 2005) (noting that a restriction to "simple and rote" job tasks sufficiently addresses moderate and occasional deficiencies in concentration, persistence, or pace).  Thus, Plaintiff's newly raised argument on this issue is also without merit.

(II) *the "ALJ Erred in Finding the Plaintiff Not Credible"*

15.  In challenging the ALJ's credibility finding, Plaintiff asserts that "there is no evidence that contradicts [Plaintiff's] allegations regarding pain and other limitations," and that the ALJ "improperly substituted his opinion for that of the medical providers."[9]  (Plaintiff's Memo at 7-8.)  Plaintiff also contends that the "ALJ failed to make a proper adverse credibility determination by 1) not specifying which allegations of pain and/or other symptom[s] he found not credible; 2) not

---

[9]As with some of Plaintiff's other assertions, the Court finds these statements to be vague, conclusory and lacking reference to specific facts relevant to the alleged error.  Moreover, the ALJ specifically cited to evidence that contradicted Plaintiff's allegations.  (See ¶ 19 infra.)

discussing the considerations or application of the factors mandated by SSR 96-7p; and 3) not stating clear and convincing reasons for rejecting plaintiff's testimony." (Plaintiff's Memo at 8.) Plaintiff further asserts that the "mere fact that clinical findings did not corroborate the claimant's testimony regarding the severity of the pain is a legally insufficient reason for an adverse credibility determination." (Id.)

16. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." Diaz v. Sec. of Health & Hum. Serv., 898 F.2d 774, 777 (10th Cir. 1990); cited in Winfrey v. Chater, 92 F.3d 1017, 1020 (10th Cir. 1996). However, the ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).

17. The ALJ found that Plaintiff's "allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision." (Tr. at 20 ¶5.) As noted above, the ALJ found that Plaintiff's ability to work was limited in several ways. Thus, the ALJ did not reject all of Plaintiff's allegations. Indeed, the ALJ acknowledged that Plaintiff experienced pain, but after considering the evidence, concluded that Plaintiff "retains the capacity to perform significant activities, *despite* his pain." (Tr. at 18 (emphasis added).)

18. Plaintiff did not specify which factors of SSR 96-7p the ALJ allegedly failed to consider. Moreover, the ALJ is not required to make a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995) are satisfied. See Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The Court notes that in his decision,

the ALJ discussed many factors, such as daily activities, location of pain or other symptoms, medications the individual takes to relieve pain or other symptoms, and other factors concerning Plaintiff's functional limitations.

19. Specifically, the ALJ pointed out that while Plaintiff alleged that he "was unable to . . . [put on] his socks and had difficulty kneeling or bending[,] . . . . the consultative examiner [Dr. Peter Moorhead] found that the claimant had very good flexibility." (Tr. at 17 (citing Ex. 4F [Tr. at 194-96] (reporting that Plaintiff performed "10 vigorous toe touches," "was able to bend over with very good flexibility," "could sit and squat easily . . . . [and] climb up on the examining table effortlessly")).) The ALJ also noted that although Plaintiff "testified to numbness and tingling in his hands, . . . he [has] not made this complaint to his doctors and has no findings substantiating neuropathy or arthritis in the hands."[10] (Tr. at 17.) The ALJ also noted Dr. Moorhead's conclusion that he "could see no reason why Mr. Lucero is not employed," and that Plaintiff lacks motivation.[11] (Tr. at 18, 195.)

20. "The ALJ's credibility findings must be affirmed if they are supported by substantial evidence on the record as a whole. See Ellison v. Sullivan, 929 F.2d 534, 537 (10th Cir. 1990)." Rice v. Apfel, 990 F.Supp. 1289, 1294 (D.Kan. 1997). Because substantial evidence supports the ALJ's credibility determination in this proceeding, it should be affirmed.

    (III)    *the "ALJ Erred in Failing to Present Hypothetical Questions that Included All the Established Limitations"*

---

[10] Plaintiff apparently told Dr. Moorhead that "his hands are getting weaker." (Tr. at 194.) However, Dr. Moorhead found that Plaintiff's upper extremity strength was normal and his grip strength was 5/5 bilaterally. (Tr. at 197.)

[11] Motivation of the claimant is an appropriate factor to consider in assessing credibility of testimony. See Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988).

21.  At the hearing, the ALJ presented hypotheticals to a VE based on the RFC and limitations set forth above. Plaintiff argues that the ALJ's hypothetical questions did not adequately reflect the Plaintiff's limitations." (Plaintiff's Memo at 8.)   However, the Court has rejected Plaintiff's challenges to both the ALJ's RFC assessment and credibility determination. Because the hypothetical posed to the VE included all the limitations that the ALJ included in his RFC assessment, the VE's answers provided a proper basis for the ALJ's disability decision at step five.

    (IV)   *the "ALJ Erred as a Matter of Law in Failing to Consider the Grids in Issuing his Decision"*

22.  The ALJ "bears the burden at step five to show that there are jobs in the regional or national economies that the claimant can perform with the limitations the ALJ has found him to have." Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999) (citations omitted).  "Where exertional limitations prevent the claimant from doing the full range of work specified in his assigned residual functional capacity, or where nonexertional impairments are also present, the grids alone cannot be used to determine the claimant's ability to perform alternative work. Campbell v. Bowen, 822 F.2d 1518, 1523 n. 2 (10th Cir.1987) (citing Talbot v. Heckler, 814 F.2d 1456, 1460 (10th Cir.1987)).  If the claimant has both exertional and nonexertional impairments, the ALJ must use the Grids first to determine if the claimant is disabled by reason of the exertional impairment alone. Frey v. Bowen, 816 F.2d 508, 513 (10th Cir.1987) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2))." Thompson v. Sullivan, 987 F.2d 1482, 1492 (10th Cir. 1993) (quotation marks omitted).  Here, the Grids did not direct a finding of disabled.[12]

---

[12] Plaintiff does not dispute that the Grid rule for an individual limited to light work, who is closely approaching advanced age, has a high school education, and skilled past work experience

23. Plaintiff argues that the "the ALJ should have used the GRIDS as a framework analysis," and the "ALJ's failure to consider the GRIDS makes his decision wrong requiring a reversal." (Plaintiff's Memo at 11.) However, as Defendant points out, the ALJ did consider the Grids, and found that "using [the Grids] . . . as a framework for decision-making, there are a significant number of jobs in the national economy that" Plaintiff could perform. (Tr. at 21 ¶13.) In addition, the ALJ utilized the services of a VE, who was present at the administrative hearing and testified regarding the availability of specific jobs for an individual of Plaintiff's "age, education, [and] past relevant work experience," as well as Plaintiff's RFC and limitations. (Tr. at 19.) Plaintiff's argument on this issue is without merit.

24. In sum, the Court finds that the ALJ did not err in determining Plaintiff's RFC, assessing Plaintiff's credibility, presenting hypotheticals to the VE and considering the Grids. Accordingly, Plaintiff's Motion **[Doc. 7]** will be **denied** and this civil proceeding will be **dismissed** with prejudice.

**IT IS SO ORDERED.**

_Robert Hayes Scott_
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE

---

(but no transferable skills) directs a finding of not disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rule 202.14.